IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

YVONNE L. WHITE, Individually and as Wife and Husband; and ROSCOE NIXON, Individually and as Wife and Husband;

Plaintiffs,

vs.

DR. JEFFREY BURWELL, Individually; P.A. CHRISTOPHER LINKE, Individually; THE PHYSICIAN NETWORK, A Nebraska Non-profit Corporation; GRAND ISLAND RADIOLOGY ASSOCIATES, P.C., A Nebraska Corporation; ST. FRANCIS MEDICAL CENTER, A Non-profit Corporation doing business in Nebraska; and TROY E. HLAVATY, Personal Representative of the Estate of Tamara S. Hlavaty, MD, deceased;

Defendants.

**8:20CV207**

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants', Dr. Jeffrey Burwell, Christopher Linke, St. Francis Medical Center, and The Physician Network, motion for summary judgment. Filing No. 63. The moving defendants argue they are entitled to summary judgment on the plaintiffs' negligence-based claims because the plaintiffs have failed to adduce expert-witness testimony as required in this medical-malpractice case. The Court agrees that the moving defendants are entitled to summary judgment on that basis and grants their motion.

## I. BACKGROUND

This case centers around a foot injury plaintiff Yvonne L. White suffered and the subsequent medical care the defendants provided her.[1] On June 10, 2018, White lacerated her foot while walking in a river near Grand Island, Nebraska. Filing No. 71-3 at 65–66. She went to the defendant St. Francis Medical Center for treatment where she was seen by Dr. Jeffrey Burwell; P.A. Christopher Linke; and non-moving defendant, Dr. Tamara S. Hlavaty.[2] Dr. Hlavaty took X-rays of White's foot which "show[ed] no radiopaque foreign bodies" and no broken bones. Filing No. 74-3 at 42. Burwell's report also indicated, "Checked the left foot x-ray, shows no signs of obvious foreign bodies." *Id.* at 32. Burwell and Linke anesthetized White's wound, cleaned it, and sutured it. *Id.* They released White with a supportive shoe and care instructions. *Id.* at 33.

On June 19, 2018, White returned to St. Francis Medical Center. *Id.* at 8–9. The parties dispute whether she reported that her left foot continued to hurt at the location of the cut or whether she only reported general left-leg pain. *Compare id.* at 9 (St. Francis medical record stating White "c[a]me[] in with complaints of left leg pain"), *with* Filing No. 71-3 at 77–78 (White's deposition in which she states the medical records must be wrong "[b]ecause I never -- I never went in for anything to do with my leg"). Burwell treated White for a nonocclusive thrombus (blood clot) in her left popliteal which was similar to a deep vein thrombosis she had received treatment for in her left leg approximately six

[1] The parties do not dispute the main facts giving rise to this case. *See* Filing No. 64 at 3–5 (Defendants' brief setting forth undisputed facts); Filing No. 71 at 6–15 (Plaintiffs' brief not contesting the defendants' undisputed facts). Rather, the parties' arguments center on the legal question of whether an expert witness is required as set forth below.

[2] Dr. Hlavaty has since passed away and her son as personal representative of her estate has been substituted in her place for purposes of this litigation. Filing No. 51 at 1.

months earlier. Filing No. 74-3 at 9. The defendants did not treat her foot on her second visit to St. Francis. *See id.* at 8–9.

On June 20, 2018, White visited the emergency department at Mary Lanning Healthcare in Hastings, Nebraska, complaining of shortness of breath and pain in her left foot. Filing No. 74-5 at 3–4. She was prescribed pain medicine for her foot and reminded to take the blood-thinning drugs for her blood clots. *Id.* at 6. She returned to the Mary Lanning Healthcare emergency department three days later with severe pain in her left foot. Filing No. 71-6 at 1. X-rays revealed “densities overlaying the plantar soft tissues at the midfoot” which “could represent radiodense foreign bodies.” *Id.* at 10. White was referred to Dr. Brent Hood, an orthopedic surgeon, for evaluation. Filing No. 71-4 at 2. He reported White “had purulent drainage” and, upon removing her sutures, he “got gross gravel out of the wound just in [his] clinic.” *Id.* at 2. He then performed two surgical procedures to debride the wound, removed “multiple gravel pieces,” and re-sutured the cut. *Id.*; Filing No. 71-3 at 86–87. White stayed in the hospital for a few days following the procedures. Filing No. 71-3 at 88–89.

White filed suit against Burwell, Linke, St. Francis Medical Center, The Physician Network (Burwell and Linke’s employer), Hlavaty, and Grand Island Radiology Associates (Hlavaty’s employer), alleging they were negligent in failing to identify and remove the gravel from her wound upon her first and second visits to the St. Francis emergency department causing her to incur unnecessary expenses and suffer mentally and physically. Filing No. 3 at 3–8. White’s husband, Roscoe Nixon, sued the defendants for loss of consortium. *Id.* at 8.

## II. DISCUSSION

Burwell, Linke, St. Francis Medical Center, and The Physician Network seek summary judgment on the basis that the undisputed evidence shows they did not violate the standard of care in treating White. Filing No. 64 at 6–7.

### A. Standard of Review

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there

is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id*. "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

**B. Plaintiffs' Lack of an Expert Witness to Prove Medical Malpractice**

Burwell, Linke, St. Francis Medical Center, and The Physician Network have presented the proposed testimony of their expert witness, Dr. Edward J. Mlinek, the medical director of the Department of Emergency Medical Services at Bryan Medical Center in Lincoln, Nebraska, who is certified by the American Board of Emergency Medicine. Filing No. 65-6 at 1–7. Dr. Mlinek opines that the moving defendants did not violate the standard of care in treating White and did not proximately cause her any harm. Filing No. 65-7 at 1–2. White and Nixon did not disclose an expert witness by the required deadline. *See* Filing No. 54 at 1 (fifth amended case progression order requiring plaintiffs to complete their expert disclosures by November 15, 2021). The moving defendants argue that without expert testimony, the plaintiffs cannot refute Dr. Mlinek's opinion that they did not violate the standard of care or cause any harm to White. Filing No. 64 at 8–12. The Court agrees the moving defendants are entitled to summary judgment.

If a defendant moving for summary judgment presents evidence that he or she did not commit medical malpractice, the burden shifts to the plaintiff to make out a prima facie case of: "(1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm." *Thone v. Reg'l W. Med. Ctr.*, 745 N.W.2d 898, 903 (Neb. 2008). Under Nebraska law,[3] "[a]s a general matter, expert testimony is required to identify the applicable standard of care" and "to prove proximate causation" in a medical-malpractice case. *Id.* at 903, 908 (citing *Fossett v. Bd. of Regents*, 605 N.W.2d 465 (Neb. 2000)).

However, "a party can make a prima facie case of professional negligence even without expert testimony in cases where 'the evidence and the circumstances are such that the recognition of the alleged negligence may be presumed to be within the comprehension of laymen.'" *Id.* at 904 (quoting *Halligan v. Cotton*, 227 N.W.2d 10, 13 (Neb. 1975)). Examples of such matters of common knowledge include "failure to remove a surgical instrument from a patient's body following a procedure or amputating an incorrect limb." *Id.* (citing *Keys v. Guthmann*, 676 N.W.2d 354 (Neb. 2004)).

In the case at hand, the moving defendants have presented the affidavit of Mlinek averring that they did not deviate from the standard of care or cause White any harm. *See* Filing No. 65-7. Therefore, the burden shifts to the plaintiffs to establish a prima facie case of the elements of medical malpractice. *See Thone*, 745 N.W.2d at 903. The plaintiffs have not presented any expert testimony in support of their allegations.[4] Rather,

[3] The parties agree that Nebraska law applies. *See* Filing No. 64 at 2 (Defendants' brief stating that "Nebraska law governs this claim of medical malpractice"); Filing No. 71 at 4–5 (Plaintiffs' brief employing Nebraska case law).

[4] The plaintiffs state in passing, "in this case there is expert testimony from the doctor who rendered a second opinion and then corrected the errors of Defendants," apparently in reference to Dr. Hood. Filing No. 71 at 5. However, even if Dr. Hood were an unretained expert within the meaning of Federal Rule of Civil Procedure 26(a)(2)(C), the plaintiffs did not timely disclose him in compliance with the Court's

they argue that the failure to identify and remove the gravel in White's wound falls within the common-knowledge exception to the expert-witness requirement. Filing No. 71 at 16. They point to the fact that the second set of X-rays taken at the Mary Lanning Healthcare emergency department revealed the gravel in White's wound and that Dr. Hood was able to see and remove some of the foreign matter upon examination in his office. *Id.* at 16–20. They argue the fact the gravel was readily identifiable by Dr. Hood demonstrates to the layperson that the moving defendants must have acted outside the standard of care during their initial treatment of White at St. Francis on June 10 and 19. *Id.* at 16–17.

Unlike leaving a surgical instrument inside a patient or amputating the wrong limb, wound care is not a matter within the common knowledge of the average non-expert physician. *Accord D'Amico v. Jersey Shore Univ. Med. Ctr.*, No. A-1155-08T2, 2009 WL 2426339, at *2 (N.J. Super. Ct. App. Div. Aug. 10, 2009) ("It is not common knowledge of a lay person to know what standard a doctor is held in treating a particular type of wound and whether the defendant fell short of that standard."). Importantly, simply because gravel was later identified and removed from White's wound does not mean the moving defendants necessarily acted negligently in failing to identify and remove it upon their initial examinations. As Mlinek stated, a number of days had elapsed between the initial X-rays and White's return to the emergency department, and during that time the wound could have changed significantly. *See* Filing No. 74-1 at 10 ("[Y]ou're comparing the presentation of June 10th with the follow-up evaluation literally 15 days later . . . . It's a different wound at that point."). The gravel may not have been identifiable initially but

progression orders. *See, e.g.*, Filing No. 54 (requiring plaintiff's disclosure of expert witnesses by November 15, 2021). Additionally, there is no evidence that Dr. Hood has opined on the standard of care nor on the moving defendants' actions in this case. *See, e.g.*, Filing No. 74-2 at 36 (White's deposition in which she admits Dr. Hood did not "make any comments . . . that were critical of any of the people at St. Francis").

shifted as the wound progressed, resulting in its later detection. Without expert testimony, neither the Court nor the future factfinder could say Burwell and Linke failed to act within the standard of care simply because Dr. Hood later removed gravel from White's wound. Because the plaintiffs have not presented any expert testimony and because the common-knowledge exception does not apply, the defendants are entitled to summary judgment.

**C. Remaining Claims**

For these reasons, White's negligence claims against Burwell and Linke fail. White's claims against St. Francis Medical Center and The Physician Network are premised exclusively on vicarious liability and thus necessarily fail as well. *See* Filing No. 3 at 3–4 (Plaintiff's amended complaint stating that liability against St. Francis and The Physician Network is premised upon respondent superior). Lastly, Nixon's claim for loss of consortium is derivative of White's main claim and the moving defendants are therefore entitled to summary judgment on his claim as well. *See Erickson v. U-Haul Int'l*, 767 N.W.2d 765, 774 (Neb. 2009) ("[A] loss of consortium claim derives from the harm suffered by the injured spouse. The rights of recovery by the uninjured spouse are based upon the injured spouse's right to recover for direct injuries.").

**III. CONCLUSION**

The undisputed evidence before the Court shows that the moving defendants met the acceptable standard of care in treating White. The plaintiffs have failed to present expert testimony to refute this conclusion and the common-knowledge exception to the expert-witness requirement does not apply. Accordingly, the Court grants the defendants' motion for summary judgment.

IT IS ORDERED:

1. Dr. Jeffrey Burwell, Christopher Linke, St. Francis Medical Center, and The Physician Network's Motion for Summary Judgment, Filing No. 63, is granted; and
2. Dr. Jeffrey Burwell, Christopher Linke, St. Francis Medical Center, and The Physician Network are dismissed as parties to this action.

Dated this 22nd day of April, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge